IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| CHRISTOPHER MILLER, | : | CIVIL ACTION |
| Petitioner, | : | NO. 08-284 |
| | : | |
| v. | : | |
| | : | |
| UNITED STATES OF AMERICA, | : | CRIMINAL ACTION |
| | : | NO. 04-382 |
| Respondent. | : | |

M E M O R A N D U M

EDUARDO C. ROBRENO, J.                                        OCTOBER 22, 2008

  Petitioner Christopher Miller filed this habeas corpus petition under 28 U.S.C. § 2255, collaterally attacking his sentence and asking the Court to vacate, set aside, or correct his sentence. He presents three arguments: (1) the Government withheld discoverable evidence pertaining to whether fraudulent withdrawals were made and to the identity of the perpetrator; (2) grand and petit juries were unconstitutionally selected and impaneled; and (3) ineffective assistance of counsel. For the following reasons, Petitioner's motion is denied.

I. **BACKGROUND**

  Petitioner was charged by an indictment with 16 counts of embezzlement of funds by a bank employee, in violation of 18 U.S.C. § 656. Petitioner proceeded to a jury trial, but the Court granted a mistrial during jury deliberations. At a second

jury trial, Petitioner was convicted of all 16 counts of the indictment. Petitioner was sentenced by this Court to 15 months imprisonment, 3 years supervised release, restitution of $66,377.48, and a special assessment of $1,600. On appeal, this Court's judgment was affirmed by the Third Circuit.

## II. ANALYSIS

Section 2255 allows a prisoner in custody to attack his sentence if it was imposed in violation of the Constitution or statute, the court lacked jurisdiction to impose it, it exceeds the maximum allowed by law, or it is otherwise subject to collateral attack. See 28 U.S.C. § 2255. The petitioner is entitled to an evidentiary hearing as to the merits of his claim unless it is clear from the record that the prisoner is not entitled to relief. See United States v. Victor, 878 F.2d 101, 103 (3d Cir. 1989). Here, Petitioner is not entitled to an evidentiary hearing because it is clear from the record that his § 2255 petition should be denied for the following reasons.

### A. DISCOVERY CLAIM

Petitioner argues that the Government failed to provide favorable evidence to him as part of its discovery obligations, and thus committed Brady violations. See Brady v. Maryland, 373 U.S. 83 (1963). In particular, Petitioner notes the absence of

the following material: (1) "pertinent accountability paper money trail slips;" (2) "reports that had to exist" regarding the fraudulent transactions; (3) auditing teller cash drawer report, auditing manager vault cash report, polices/ procedures regarding tellers; and (4) handwriting exemplars that Petitioner provided to the FBI.

        As a preliminary matter, the Court need not consider the merits of Petitioner's discovery claim because Petitioner's failure to raise this argument at trial or on direct appeal constituted procedural waiver.  Generally, issues not raised at trial or on direct appeal have been waived and cannot be litigated on a Section 2255 petition in the absence of showing: (1) cause excusing procedural default; and (2) actual prejudice resulting from errors of which Petitioner complains.  <u>United States v. Frady</u>, 456 U.S. 152, 167 (1982).  Here, Petitioner has shown neither.

        Nonetheless, even upon consideration of the merits of Petitioner's discovery claim, recovery under this claim is denied.  Pursuant to <u>Brady</u>, due process requires the prosecution to disclose evidence "material to either guilt or to punishment." 373 U.S. at 87.  To prevail upon a <u>Brady</u> claim, a petitioner must prove that the evidence was: (1) suppressed; (2) favorable; and (3) material to the defense.  <u>Riley v. Taylor</u>, 277 F.3d 261, 301 (3d Cir. 2001).  Evidence is material if its suppression

"undermines confidence in the outcome of the trial." United States v. Bagley, 473 U.S. 667, 678 (1985). Miller fails to show that any of the allegedly suppressed pieces of evidence rise to the level of a Brady violation. The Court considers each piece of evidence in turn.

First, the Court finds that the "pertinent accountability paper money trail slips," allegedly withheld by the Government, were in fact produced. Upon review of the Government's trial exhibits, the Court notes that the following evidence was presented by the Government at trial: bank records showing that Petitioner's unique and confidential teller number was used to access customer account information and process the withdrawals; transactional paperwork documenting that the withdrawals; images captured by the bank surveillance camera demonstrating that none of the victim account holders were present at the time the withdrawals were made; and attendance records demonstrating that Petitioner was the only employee working at the bank at the time of the withdrawals. During the trial, Government expert witness, Cindy Wessner, Vice President and Corporate Internal Investigations Manager for Sovereign Bank, testified in detail as to how the documents and images produced by the Government adequately explained the fraudulent transactions. Transcript of Record at 82-92, May 18, 2005 (doc. no. 89). Accordingly, because the relevant money trail slips

were produced, this claim is denied.

Second, the Court finds that Petitioner fails to show that the alleged "reports that had to exist" regarding the fraudulent transaction did actually exist. As noted above, the Government produced ample records to substantiate Petitioner's responsibility for the fraudulent transactions. The Government argues that Petitioner's discovery claim is rooted in the "fanciful and unfounded belief" that bank records exist which refute the bank records produced at trial. (Doc. no. 124, p. 17). Without further detail as to the existence of records that Petitioner claims were withheld, this claim is denied.

Similarly, Petitioner fails to provide a basis as to the "auditing teller cash drawer report, auditing manager vault cash report, [and] polices/ procedures regarding tellers." Petitioner notes that these items were withheld, but does not provide insight to what these records are, nor the way in which these records, if provided, would be helpful to Petitioner. (Doc. No. 119, p. 7-8).

Finally, the Court concludes that Petitioner's discovery claim based upon the allegedly withheld handwriting exemplars is also without merit. As noted in the Government's response to Petitioner's § 2255 petition, nothing in the record suggests that access to the handwriting exemplars was denied to Petitioner. (Doc. no. 124, p. 18). However, even assuming the

handwriting exemplars were denied to Petitioner, Petitioner's argument still lacks merit. As the Government highlighted in its direct examination of Government expert witness, Meredith DeKalb, a FBI forensic document examiner, based upon a comparison of photocopies of the 16 withdrawal tickets with known handwriting exemplars of Petitioner, DeKalb was unable to reach an opinion as to whether Petitioner was responsible for the fraudulent slips. Transcript of Record at 76, May 19, 2005 (doc. no. 90). Moreover, on cross examination, Defense counsel confirmed that DeKalb reached no conclusion based upon the handwriting exemplars. Id. at 79. Notably, the inconclusive results of the handwriting analysis, emphasized by both the Petitioner and the Government, potentially exculpated the Defendant in the eyes of the jury. Without a precise argument as to how the handwriting exemplars would have been helpful to Petitioner, even withstanding the direct and cross examination of DeKalb, the Court finds that no Brady violation occurred.

### B.   PROPRIETY OF GRAND AND PETIT JURY

Petitioner argues that his conviction was "obtained by action of a grand or petit jury which was unconstitutionally selected and impaneled." In support of this claim, Petitioner claims: (1) juror #7 was replaced by alternate juror toward the conclusion of deliberations due to a previously scheduled medical

procedure;[1] and (2) the jury request to view the videotape from bank surveillance and was denied. Neither of these claims have merit.

One, replacing juror #7 with an alternate juror does not constitute a Constitutional violation. Moreover, because Petitioner did not object to this substitution at trial, nor on direct appeal, Petitioner has procedurally waived his right to this challenge.[2] See Oelsner v. United States, 60 Fed. Appx. 412, 413 (3d Cir. 2003).

Two, in consideration of the jury request to view the surveillance video in its entirety, the Court notes that this request was withdrawn once the jury was informed of the length of the video. Transcript of Record at 51, May 20, 2005 (doc. no. 91) In addition, although the jury did not view the video in its

---

[1] Petitioner argues that the Court told the jury the trial would be complete by Friday, May 20, 2005. Because at the end of the day on May 20, 2005, jurors were "tired" and one juror needed to leave for a family wedding, the jury asked for deliberations to reconvene after the weekend. Petitioner argues that the replacement of juror #7 was the direct result of the Court approving the request by the jury to stay deliberations until the following Monday. (Doc. no. 119, p. 7)

[2] As an extension of this argument, Petitioner asserts that once the alternate jury convened and the Court instructed deliberations to start anew, the verdict was returned in 2 hours. Petitioner argues constitutional impropriety with the relatively short time period in which the jury verdict was returned, as compared to the over 6 hours of deliberations which occurred on Friday, May 20, 2005, prior to the substitution of Juror #7. Petitioner, however, fails to argue how the discrepancy in jury deliberation times equated to a Constitutional violation.

entirety, relevant images of all customers at Petitioner's station during the time frame beginning 20 minutes before and ending 20 minutes after the withdrawals were offered to show that no customers were present during the time of the questioned withdrawals. Transcript of Record at 93, May 18, 2005 (doc. no. 89). Petitioner offers no evidence to suggest that the jury viewing the video in its entirety, as opposed to viewing highlighted images of relevant times, would have been helpful to his case.

### C.  INEFFECTIVE ASSISTANCE OF COUNSEL[3]

Petitioner argues that his counsel was ineffective for the following reasons:

(1) failed to subpoena the documents he identifies in discovery claim of his § 2255 petition;

(2) failed to subpoena "all Brady material evidence and factual knowledgeable witnesses;"

(3) failed to subpoena various bank policies and procedures pertaining to teller functions;

(4) failed to "submit/ and or view" the government's various

---

[3] At his first trial, Petitioner was represented by Kenneth Edelin, of the Federal Public Defenders. Although the first trial resulted in a hung jury and a mistrial, Petitioner requested new counsel for the retrial. The Court appointed Michael Farrell, who served as trial counsel on the retrial, and after trial, without objection by Petitioner, represented him on appeal.

-8-

components of evidence used to establish that Petitioner, as opposed to any of his co-workers perpetuated the fraud;

(5) failed to contest the meaning of various documents and polices/ procedures;

(6) failed to move into evidence and display bank surveillance tapes;

(7) failed to visit the crime scene; and

(8) failed to interview Wessner in advance of trial.

In order to prevail upon an ineffective assistance of counsel argument, a petitioner must meet the two-pronged test set forth in <u>Strickland v. Washington</u>, 466 U.S. 668 (1984). First, petitioner must show that his counsel's performance was deficient. <u>Id.</u> at 687. This requires a showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed by the Sixth Amendment. <u>Id.</u> Second, Petitioner must show that the deficient performance prejudiced the defense. <u>Id.</u>

The Court denies Petitioner's ineffective assistance of counsel claim because Petitioner fails to meet both prongs of <u>Strickland</u>. Even assuming that any of the eight examples of ineffective assistance of counsel proffered by Petitioner do constitute deficient performance to satisfy prong one of <u>Strickland</u>, Petitioner is unable to show that any of these

actions were prejudicial to his defense.

Notably, ineffective assistance of counsel instances one through five highlight counsel's failure to acquire or introduce evidence corresponding to Petitioner's discovery claim, addressed in Part II.A of this memorandum.  Because the Court concluded that Defendant had access to all relevant material, to the extent the material existed, failure of his counsel to obtain further material was not prejudicial to Defendant.  Similarly, Petitioner's sixth alleged instance of ineffective assistance of counsel, failure of counsel to introduce full video surveillance into evidence, is also not prejudicial to Defendant because the Court concluded that Petitioner failed demonstrate that viewing the video in its entirety would have been useful to his case.

Next, the Court rejects the ineffective assistance of counsel claim based upon counsel's failure to visit the crime scene.  Petitioner provides no evidence that counsel's failure to visit the Manoa branch bank caused any prejudice to the Petitioner's case.  Nor does Petitioner articulate how counsel's failure to visit the scene of the crime undermined counsel's performance at trial.  Moreover, the record reveals that images of the pertinent portions of the bank were shown to the jury by both the Petitioner and the Government, including photographs of the bank interior, a schematic of the bank layout, and bank

-10-

surveillance videotape.  It is evident from the record that Petitioner's counsel had a sufficient level of familiarity with the crime scene, without physically visiting the area.

Finally, the Court rejects the ineffective assistance of counsel claim based upon Petitioner counsel's failure to interview, prior to trial, Government expert Wessner.  Again, Petitioner fails to articulate the prejudice he experienced as a result of his counsel's failure to conduct an interview of Wessner prior to trial.  An analysis of the record reveals that Petitioner's counsel skillfully cross examined Wessner at trial.  Transcript of Record at 154-192, May 18, 2005 (doc. no. 89); Transcript of Record at 3-70, May 19, 2005 (doc. no. 90).  Because Petitioner fails to satisfy Stickland, Petitioner's claim is denied.

An appropriate order follows.

```
               IN THE UNITED STATES DISTRICT COURT
            FOR THE EASTERN DISTRICT OF PENNSYLVANIA
```

| | | |
|---|---|---|
| CHRISTOPHER MILLER | : | CIVIL ACTION |
|     Petitioner, | : | NO. 08-284 |
| | : | |
| v. | : | |
| | : | |
| UNITED STATES OF AMERICA, | : | CRIMINAL ACTION |
| | : | NO. 04-382 |
|     Respondent. | : | |

### O R D E R

**AND NOW**, this **22nd** day of **October 2008**, upon consideration of the petition for writ of habeas corpus (doc. no. 119), it is hereby **ORDERED** that the petition is **DENIED**.

**IT IS FURTHER ORDERED** that there is no probable cause to issue a Certificate of Appealability.[4]

**IT IS FURTHER ORDERED** that the case shall be marked **CLOSED**.

**AND IT IS SO ORDERED.**

_____
EDUARDO C. ROBRENO, J.

---

[4] A prisoner seeking a certificate of appealability must demonstrate "a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). "A petitioner satisfies this standard by demonstrating that jurists of reason could disagree with the district court's resolution of his constitutional claims or that jurists could conclude the issues presented are adequate to deserve encouragement to proceed further." Miller-El v. Cockrell, 537 U.S. 322, 327 (2003). No basis for a certificate of appealability exists in this case, as Petitioner is unable to meet this standard.